Last case this morning is United States v. Dominguez-Barradas, 23-2003. Counsel for Appellant, if you'd make your appearance and proceed, please. Thank you, Your Honor. Good morning. Your Honor, as may it please the Court, Counsel, my name is Barbara Mandel, and I am an Assistant Federal Public Defender in Las Cruces, New Mexico. I represent Mr. Leo Dominguez-Barradas. Your Honor, the upward variance imposed by the District Court was unreasonable, and we're asking this Court to reverse. Review for Substantial Unreasonableness is not a total disformality, and it cannot be a rubber stamp of the judge's sentence. This Court must look at the record, the whole record, to determine whether the District Court looked at all the 3553A factors in a holistic way. And in this case, the Court did not do that. This Court must make sure that the District Court did not rely on one factor almost exclusively, which this Court did in the District Court. She relied on my client's prior offense from 2007. But it's related to other facts, which is to say his present wife has a girl about the same age. His present wife. No, there was a stepdaughter, Your Honor. Yeah. Yeah, had a daughter. But there was no evidence that there was any improper conduct to that daughter. The daughter wrote a letter that he was a fine person, that he was a good dad. But it's more than just that he had that conviction. The District Court took account of that other fact. I'm not saying it's dispositive. I'm just saying the District Court acknowledged that fact. Actually, she didn't. She specifically said that she was not considering that the daughter did not say that he didn't sexually abuse her. That's a little different. Well, she specifically said that. And in her statement of reasons, she never said anything about the family in his home country, in Mexico. All she said was that he needed to be deterred from returning to the United States because that 48-month sentence wasn't enough to deter him from coming back. And that there was some risk of cynicism. And I submit that those reasons are not valid. And the court needs to look at whether the reasons given by the judge are valid. And not just the reasons in the statement of reasons, though. But the reasons also at the hearing, right? The reasons at the hearing included one more reason. And that was that the 48-month sentence didn't capture the seriousness of the prior offense. Well, but also said warranted by the particular circumstances of this case. I mean, we have never required the judge to go through the 3553 factors and discuss each one explicitly, have we? No, Your Honor. But the court has required that the district court look at the whole, all the factors and the 3553 factors and has looked at all of them and considered all the relevant factors. In this case, there were a considerable amount of favorable factors for Mr. Dominguez. The court listed them basically in almost two pages of the transcript. Well, what do you take from that? The court did list them, so the court acknowledged them. The court knew they were there. It may not have drawn the inference that you would have liked for it to draw from them. But it says, I recognize this, I recognize this, I recognize this, I recognize this. Nevertheless, I think in totality that this is the right sentence. What's wrong with that? Well, Your Honor, what we're saying is that she, not only did she completely disregard those facts, but they cut against her ultimate decision. Well, she didn't disregard them. She didn't give them the weight that you would have liked. I don't believe that she gave them any weight, but there's no, because the factors were so strong on that side that he had 17 letters of recommendation from his hometown, that he served a 48-month sentence, he had stopped drinking, which she admitted would lessen the risk of recidivism. She acknowledged that, that he hadn't come back for 12 years, so there was no reason to think the idea that a guideline sentence would not deter him was not enough to deter him from coming back. It's not rational because he was out for 12 years. There's no reason to think a 21-month sentence would not deter him. He had never had a reentry before. We look at the case of Caballero, for instance, a reentry case, where the court affirmed the upper variance. Mr. Caballero had a 45-day sentence, a 6-month sentence, then an 18-month sentence, and then a 21-month sentence, all for the same reentry. But you have the Supreme Court's decision in Martinez-Boraghan, where it was very similar to this, where it's an illegal reentry after the defendant had been convicted of child sexual assault, and the Supreme Court said there's nothing wrong with putting significant weight on the severity of the prior conviction in sentencing on the reentry. Your Honor, Martinez-Boraghan was a guideline sentence, and the issue was whether that guideline sentence was reasonable. It was a very high sentence, and the defendant said that that sentence wasn't reasonable, but it was a guideline sentence. In this case, the guideline sentence, first of all, was advocated by the government, was advocated by the probation officer. The guideline sentence was already higher than other defendants in our district who get a clean agreement because he had his prior sex with them, so it was higher, and it was his first reentry. And he had no other criminal history in this country, nor did he have any criminal history in Mexico, as evidenced by a letter of certification from his town. And all of which he considered, all of which he expressly considered on the record. And to your colloquy with Judge Phillips, the fact that she took off the table drawing some adverse inference from the omission of the statement by the daughter about not being sexually abused doesn't mean the district court could not consider that that stepdaughter was of a similar age and the risk to the public, which the court talked about too and associated with them. And so that was a risk perspective, not drawing upon what he did on the sentence that he got before. So that was in the record too. It was in the record, Your Honor. And she said she considered them, but just because a district court says things doesn't mean that they really considered them. Well, wait a minute, wait a minute. I mean, I'm sorry, words matter. And the district court is presumed to know the law and to follow it. And so, I mean, the fact that the inferences from the facts are not the ones that you would like doesn't mean the district court didn't do what it said it was going to do. And in fact, the law is pretty clear. We are to presume that it did what it said it was going to do unless you can show us some reason to believe otherwise. And tell me that reason. Well, the court never said when she reviewed, when she gave her sentence or in the statement of reasons that she was protecting a little girl in Mexico. She never said that. She spoke of public safety or public concern about protecting the public. Well, and that came up in the context of the, and it didn't have to be the little girl in Mexico, but she did expressly say that that stepdaughter was the same age as the child or around the same age as the child in the prior event, right? She said that at one point, yes. But she based her reason on a recidivism report from 2006. That's what she based it on, that there was some risk of recidivism. And after that report came, first of all, if I had given a, asked for a downward variance and based my request on a 15-year-old or 16-year-old report, I would be thrown out of court. That's what she based it on. After that, my client did his 48, got 48 months, did his sentence of 48 months, stopped drinking, went back to his home country and stayed there for 12 years. And so it's not like we have a defendant who continues to commit crimes in the United States or has a violent crime that they just committed that they're being sentenced on and has a pattern of violent crimes. That's a rational basis. We agree to upwardly vary to protect the public. But this is a 12-year-old offense. Actually, it's more, 15-year-old offense. And supposedly, after going to prison for 48 months, the defendant should be rehabilitated. The court also wrote in her statement of reasons and said, I'm doing this for correctional purposes to give him help. But there was nothing in the record that he would get any help or that he needed any help or that he would get any help in his sentence for reentry. There's nothing in the record that he would get that. And I still submit that it was irrational for the court to rely on that report from 2006. Would you give us your response to the government supplemental authority that was filed? Yes. And what do you think of that? Yes, I will, Your Honor. There are two cases that the court has ruled on recently and has affirmed in similar situations where there's a sex offense. In fact, this panel looked at Kaivonagwa. And Kaivonagwa had a very short sentence, had a misdemeanor and a one-year sentence. And in that case, the court said that that sentence didn't capture the seriousness of his prior criminal history. And that was a rational basis because there was no upward – because he had a misdemeanor, he didn't get an upward adjustment on his offense level. It stayed low. And the court could rationally think that wasn't enough to punish him. It was an under-representation of criminal history. The court never said that 48 months was not enough. And I submit, Your Honor, that when you look at what this court is doing, no sentence is going to be enough to deter a defendant or to protect the public. You're going to see a 10-year sentence come in front of you pretty soon. That wasn't enough. In Maia Kaye, the other case that the government submitted, we have significantly different facts. Also, there was a one-year sentence there and a lengthy term of probation. And there was evidence of what the defendant was supposed to do during his term of probation, which we had nothing in our case. And he violated those conditions. He was coming back to the United States to see his family. And the young girl who he abused was in that family. He had family in the United States and was coming to see them. My client, in this case, there was no reason to believe he was coming to see the family. He just said he was coming to work. He was coming for the simple reason, a one-time reason that his pandemic, he lost his job with the pandemic. Well, is it a one-time reason? I mean, he said, and if I recall correctly, he said in the testimony, well, you know, when you're in Mexico, there are only two choices. You either join a gang or you come to the United States. Well, why is it that, why wouldn't that let a district court say, well, I've got to do something to drill home to him, that you better find something else to do, because there needs to be a deterrent to you having that calculus in your mind. Does that calculus suggest that, well, I'm not joining a gang, so I'm going to come back, right? No, Your Honor. We respectfully disagree with that. The fact that he did not come back for 12 years, came back and would have gotten a guideline sentence, which would have been significant punishment to teach him that he couldn't come back. And if there have been cases where the courts have said that one sentence, if a defendant gets one sentence, that's enough to deter him, one sentence. If that's the only sentence and they have no prior criminal history, that's enough to deter him. He has no prior reentries. He's not the kind of defendant that keeps coming back. He had a supportive family in Mexico. He had a wife, he had children, he had a family, he had a young boy he wanted to get back to desperately, and he had the support of his community. Well, I'm not saying that's the only inference one can draw from that statement, but that statement were words out of his mouth. And those statements had no end date on the notion of coming back to the United States. It said, join a gang or come to the United States. Why wouldn't I, as a district judge, be entirely reasonable in saying, well, you know what, that means I've got to make, I've got to change his calculus because he's told me what his calculus is and I need to do something to change it. Well, Your Honor, that's really what all reentries are, is people coming to the United States to work. And if the court is thinking, if a court varies upward, just because a person comes back after they have committed a crime, there should be an upward variance in every reentry case because they all come back if they have, most of them have prior convictions because they've been deported and they come back. Good morning again, Your Honors. Counsel, may it please the court. James Braun on behalf of the United States. In reviewing a sentence for procedural, for substantive reasonableness, this court gives substantial deference to the district court and only reverses a sentence if it is arbitrary, capricious, whimsical, or manifestly unreasonable. The sentence in this case was none of those things. To the contrary, it was a thoughtful exercise in balancing the Section 3553A factors, for which the district court provided a cogent, reasonable explanation for why a 15-month variance was appropriate. Ultimately, the defendant is asking this court to second-guess the district court's weighing of the 3553A factors. Which is contrary to the position the government itself took at his sentencing, right? As far as what the appropriate sentence was? Yes. The United States did not oppose a sentence at the high end of the guideline. Which is not what he got, right? And that may have been a reasonable sentence as well. But if there are two possible reasonable sentences, the judge choosing one over the other is not an abuse of discretion. Well, one of the reasons that the government supported a sentence below was his health. Is that right? I think all of the factors that were in the PSR, and yes, one of those would have been his health. Okay. Well, the court didn't mention his health at all, so isn't there a problem in terms of it not taking that into consideration? I think the court listed out all of the things it had taken into account, which included the defendant's submission in writing, requesting a guideline sentence. And so that would have been included. And the court went into great detail about the things it was considering. You know, the fact that he had been in Mexico for 12 years, that he had received the letters in support. All of those things. It just decided that the other factors, deterrence, protecting the public, that those things mattered more in this case, on the particular facts of this case, and that those facts justified a 15-month upward variance. And as far as protecting the public, we would agree that that would include the 13-year-old stepdaughter that the district court specifically referenced. And even though she said at the sentencing hearing that she wasn't going to take into account the lack of information that the defendant hadn't done anything inappropriate with the stepdaughter, she didn't say she was disregarding the fact that he had that 13-year-old stepdaughter in Mexico. And so, of course, the longer the defendant is in prison in the United States, the longer he'll be away from her. And the older she'll be, and he gets back to Mexico. Oh, please. It is a 60% increase over the government's top-end recommendation,  Is that part of the equation? Well, this court has been very clear also that there are no mathematical formulas. I understand there's no mathematical formula, but there is a mathematical fact, which is 60%, which is a pretty good pop, especially when it's over the top-end as the government recommends. Yeah, and you look at the most recent case from this court, where the court affirmed a 17-month upward variance to the statutory maximum. Over the government's recommendation? I don't believe the government had recommended anything lower there, no. That's why this case is a little different to me, so maybe you can talk to that. Well, and I think that, first of all, there's a difference between the government affirmatively recommending something and saying that it wouldn't object to a sentence at the high end of the guidelines. It's not like we put on evidence in favor of a sentence at the high end of the guidelines. I thought it recommended that I could be mistaken. And I would trust your memory over mine. But, again, the government's position at the end of the day doesn't matter when the district court is the ultimate decision-maker. And it's the district court that gives the substantial deference. It's the district court that sentences hundreds and hundreds of defendants and so is in a unique position to determine that this particular defendant, on these facts, is in need of a greater sentence, that a 15-month variance here is appropriate. And the district court had found that the prior sentence was not sufficient to account for the seriousness of his offense, right? Right. Okay. I guess this is my concern. Consistent, following up on Judge Phillips' point about the court going against the government's recommendation, you add that on to the fact that the court had said that the prior sentence was not sufficient. What I want to know is what in the record should assuage my concern that the court essentially was punishing the defendant in this case for the fact that he didn't get enough last time? Number one, what in the record should assuage my concern about that? And I take it you agree that if that is what the court, in fact, did, that that is not appropriate. Well, the district court was very clear that it was only sentencing him for this case. It specifically said, I am not sentencing him for that prior sentence. I saw the line, yes. I understand the line, but the point is, what circumstances bolster that statement? Well, what circumstances bolster it is that in a reentry case especially, the guideline range is driven by the length of the prior sentence. And so in this case, the 48-month sentence equaled a certain increase in the base offense level. If he had had a five-year or more sentence in that prior, he would have been, I think, two levels higher there. And that guideline specifically says, if the sentence on the prior conviction does not adequately represent the severity of the crime, then a departure may be warranted. That's in the commentary. And so in a case like this, especially, the length of the prior sentence matters. Not for the district judge in this case to say, well, I don't think you got enough the last time, and so I'm going to give you more this time and punish you for that. It's that the sentence is driven by how long was that sentence in the prior case. And if the district judge here believed the 48-month sentence, which I believe he served around two years and nine months, if you look at the PSR when he was arrested and when he was released, that that simply doesn't represent the seriousness of that offense, a child sex abuse case. And so therefore, I think you are particularly dangerous. I think the public needs to be protected from you, and I think you need to be deterred from coming back to the United States by an especially stiff sentence in this case. And I think that's what the district judge here did. And that's why, and to quote you back to Judy Woods Matter, when the district judge said, I'm not sentencing you for that prior case, she meant it. I was cognizant of my words when I was having that discussion with you. But let me ask you this. I take it that you, well, I'm going to ask you, do you agree that if, would it be improper for the district court to essentially say, well, you know, in every case, if I have a defendant who has a prior sexual assault and a reentry case, I'm going to vary up. That would be inappropriate. Yes, we would agree with that. All right. And that's not what happened here. The court looked at the very specific facts of this case and made a sufficient record. And so this court should affirm that sentence for all of those reasons. Unless the court has any additional questions, I would be able to remain with my time. Thank you. Mr. Mandel. Ms. Mandel, you will be heard if you want for one minute. It doesn't complore with the 3553A factors or provide respect for the law, for the law or for the court, for a court to decide that one defendant has one kind of prior conviction or one kind of case that the court is going to give other than a guideline sentence in those cases. Justice Breyer was concerned about that in the argument of Gaul. And the defense lawyer in that case said that would not be a good . . . that would not be sentencing in accordance with Section 3553A. And that's what this district judge is starting to do here. And when you look at what she did in this case, that's what she did. She did not sentence in accordance with 3553A. Thank you. Thank you, counsel. The case is submitted. Appreciate the arguments.